IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PATRICIA S. STREET,

Plaintiff,

v.

JO ANNE B. BARNHART, Commissioner of Social Security,

Defendant.

CV 05-1917-MA

OPINION AND ORDER

KIMBERLY K. TUCKER
820 SW Second Ave., Suite 200
Portland, OR 97204

Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902

THOMAS M. ELSBERRY
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075

Attorneys for Defendant

MARSH, Judge:

**INTRODUCTION**

Plaintiff, Patricia S. Street (Street), brings this action for judicial review of a final decision of the Commissioner of Social Security denying her application for disability insurance benefits (DIB) and supplemental security income (SSI) under Title II and XVI of the Social Security Act (the Act). See 42 U.S.C. §§ 401-33, 1381-83f. The court has jurisdiction under 42 U.S.C. § 405(g).

Street alleged an amended disability onset date of September 28, 2001 based on multiple impairments including Graves disease, sarcoidosis, osteoarthritis and fibromyalgia. She was 56 years old at the time of the hearing before an Administrative Law Judge (ALJ) on December 20, 2004, after which she was found not disabled. She has a high school education and past work experience as a secretary, administrative assistant and office manager.

After the Appeals Counsel denied Street's request for review on November 4, 2005, the ALJ's decision denying her application

became the final decision of the Commissioner, from which she seeks judicial review.

On appeal to this court, Street alleges the ALJ erred by: (1) failing to properly assess her residual functional capacity; and (2) erroneously concluding that she remains capable of performing her past relevant work. The Commissioner maintains that her decision is supported by substantial evidence and based on correct legal standards.

For the reasons that follow the Commissioner's decision is AFFIRMED and this case is DISMISSED.

**STANDARD OF REVIEW**

The initial burden of proof rests on the claimant to establish disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir.

1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. Andrews, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

**DISABILITY ANALYSIS**

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. The claimant bears the burden of proof at steps one through four. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). Each step is potentially dispositive.

Here, at step one, the ALJ found Street had not engaged in substantial gainful activity since her amended alleged onset date. See 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two the ALJ found Street had the following severe impairments: fibromyalgia, osteoarthritis, and a history of sarcoidosis. See 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three the ALJ determined that Streets' impairments did not meet or equal the requirements of a listed impairment. See 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d).

The ALJ assessed Street with the residual functional capacity (RFC) to perform sedentary work, which involves lifting no more than ten pounds and only occasional walking or standing. See 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945.

At step four the ALJ found Street remained capable of performing her past work as a secretary, office manager or office assistant. See 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). Accordingly, the ALJ found Street was not disabled at step four, and therefore did not proceed to step five of the sequential evaluation.

## DISCUSSION

### I. The ALJ's residual functional capacity assessment is supported by substantial evidence.

According to Street, the ALJ erred by failing to include "nonexertional limitations typically associated with fibromyalgia," such as fatigue and pain, in his assessment of Street's residual functional capacity (RFC). In response to the

Commissioner's contention that the ALJ properly rejected Streets' subjective reports as unreliable, Street also contends in her reply brief that the ALJ erred in finding her less than fully credible.

A claimant's RFC is an assessment of what she can still do despite her limitations. SSR 96-8p. RFC is used at step four of the sequential evaluation to determine whether a claimant is able to do her past relevant work, and at step five to determine whether she is able to do other work, considering her age, education, and work experience. The ALJ assesses a claimant's RFC by reviewing all relevant evidence in the record, including testimonial and medical source statements, to determine the extent to which her medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect her capacity to do work. Id.

In this case, the ALJ thoroughly reviewed the testimonial and medical evidence in the record and determined that it supported finding Street limited to sedentary level work. The ALJ considered Street's assertion that she could not work due to fatigue, pain, shortness of breath, weakness, headaches, and a racing heart, but he found these claims unreliable for several reasons, such as (1) lack of objective medical evidence to support the severity of the symptoms she alleged; (2) failure to

follow multiple physicians' advice to exercise; (3) ability to manage her allegedly disabling pain without strong pain medication; and (4) lack of documented complaints of ongoing neck pain and headaches.

According to Street the ALJ erred in the credibility evaluation by misapplying the legal standard, failing to properly factor the "longitudinal aspect" of her pain complaints, and relying on the opinions of two doctors who last evaluated Street in October 2002 when the ALJ's decision was published in January 2005.

The ALJ is not required to credit every allegation of disabling pain or else disability benefits would be available on demand. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). However, once a claimant establishes the existence of an impairment and a causal relationship between the impairment and some level of symptoms, the ALJ must provide clear and convincing reasons, supported by substantial evidence, for rejecting the claimant's subjective claims. Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595 (9th Cir. 1999); see also Thomas v. Barnhart, 278 F. 3d 947, 958-59 (9th Cir. 2002).

In assessing a claimant's credibility the ALJ may consider: (1) ordinary techniques of credibility evaluation, such as the claimant’s reputation for truthfulness, prior inconsistent statements concerning the symptoms, and other testimony by the

claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) the objective medical evidence; (5) the location, duration, frequency, and intensity of symptoms; (6) precipitating and aggravating factors; (7) the type, dosage, effectiveness, and side effects of any medication; and (8) treatment other than medication. See Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996).

In this case the ALJ's reasons for discrediting Street fall within these categories, and amount to clear and convincing evidence to support rejecting her testimony.

I am unpersuaded by Street's contention that the ALJ held her to a higher standard of proof by stating that the objective medical evidence does not support her "assertion of totally disabling symptoms and limitations." In evaluating Street's credibility the ALJ properly considered that the objective medical evidence did not support the degree of disability she alleged. Under Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986), if the claimant produces objective evidence of the existence of an impairment that could produce some degree of the symptoms she complains of then the ALJ must provide clear and convincing reasons for rejecting her complaints. However, the ALJ may consider the lack of supporting objective medical evidence as one

factor in evaluating a claimant's credibility. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).

In this case the ALJ found little medical evidence to support Street's allegations. He found little evidence of an ongoing lung problem; instead the evidence showed the shortness of breath Street complained of was due to deconditioning. Deconditioning was also the likely cause of her elevated heart rate during stress testing since no evidence of cardiac sarcoid or ischemia has been found. While MRI testing showed "very early" degenerative changes in her spine, Street exhibited a full range of motion in her neck and "no significant ongoing range of motion problems...related to [her] back." Finally, testing indicated that Street has osteoarthritis in the hands, yet it also revealed that her grip strength and upper extremity strength were only mildly diminished. All of these findings amounted to one clear and convincing reason, among several the ALJ cited, to discredit Street's testimony.

Street next argues that the ALJ erroneously failed to consider the "longitudinal aspect" of her pain complaints, such as that she has sought treatment for pain since 2001. To the contrary, the ALJ appropriately discussed medical evidence as far back as August 2001, one month before Street's alleged onset of disability, when she complained of fever and a pounding heart. In any event, Street fails to point to any specific evidence the

ALJ allegedly overlooked that would call into question the substantial evidence upon which the ALJ's credibility determination is based. Accordingly, I find no merit to this argument.

Street's final claim that the ALJ erred in relying on the medical opinions of Brian Santini, M.D., and Sarah Becker, M.D. in assessing her RFC is unfounded. She argues that since Dr. Santini last saw her in February 2002, and Dr. Becker last saw her in October 2002, but she wasn't diagnosed with fibromyalgia until November 2003[1], they could not have considered the effects of fibromyalgia in assessing her work-related functional limitations. Although the label "fibromyalgia" had not yet been attached to Street's symptoms, she complained of the same symptoms she now attributes to fibromyalgia as early as July 2001, as she herself asserts.

Dr. Santini clearly considered Street's complaints of low back and hip pain and ordered x-rays of her spine in March 2002. The x-rays showed only minimal degenerative changes. Nevertheless, Dr. Santini appeared to largely credit Street's complaints when he assessed her with the ability to perform only sedentary work. Similarly, Street complained to Dr. Becker about pain in her ribs and chest wall, shortness of breath, and

[1] The record actually reflects the first diagnosis of fibromyalgia was made in February 2004 by Lyndon Box, M.D.

"arthritis" in her wrists, fingers, shoulders and hips. Dr. Becker also ordered x-rays, which showed no acute disease of the chest, and found pulmonary functioning tests and an EKG were essentially normal. Dr. Becker prescribed an exercise regime to address what she felt was Street's deconditioning. In July 2002 Dr. Becker diagnosed degenerative neck arthritis and recommended heat, Advil and rest. She also explicitly stated that she did not think Street was a candidate for disability and that she could probably do some clerical work. Thus, both doctors clearly considered the impact of the symptoms Street now attributes to fibromyalgia when assessing her functional ability in 2001 and 2002. Notably, the doctor who first rendered a diagnosis of fibromyalgia - Dr. Box – did not perform a residual functional capacity assessment, but did prescribe increased activity.

In sum, I find substantial evidence supports the ALJ's clear and convincing reasons for rejecting Street's credibility, and his assessment of her residual functional capacity. According, there is no merit to Street's contention that the ALJ failed to account for any limitation that was supported by substantial evidence.

**II. The ALJ's step four decision was supported by substantial evidence.**

Street argues that the ALJ erred at step four of the sequential evaluation by posing an incomplete hypothetical question to the vocational expert (VE), who testified that Street

remained capable of performing her past relevant work. Street's claim is unpersuasive for two reasons. First, as discussed above, there is no merit to Street's contention that the RFC assessment was incomplete. Second, though the ALJ consulted a VE in this case regarding the demands of Street's past work, he need not have taken this precaution to find Street not disabled at step four. The burden remains on the claimant at step four to prove she cannot perform her past relevant work. See 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). I find substantial evidence supports the ALJ's determination that Street failed to meet this burden.

**CONCLUSION**

Based on the foregoing, the Commissioner's decision is AFFIRMED, and this case is DISMISSED.

IT IS SO ORDERED.

DATED this 10_ day of October, 2006.

/s/ Malcolm F. Marsh
Malcolm F. Marsh
United States District Court Judge